THE BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY v. FINCH.

1. COUNTY SUPERINTENDENT'S COMPENSATION—STATUTORY CONSTRUCTION.

The salary act of 1891 repealed previous statutory provisions relating to the compensation of a county superintendent of public instruction.

2. SAME—DEPUTY.

The salary of a county superintendent of public instruction as provided by the act of 1891 is the only compensation to which he is entitled. It contains no provision for the appointment of deputy superintendents, and the county is not liable to the payment of a deputy's compensation.

3. COUNTY FUNDS.

County commissioners are not invested with discretion in regard to the disbursement of county funds.   Such funds can only be applied as directed by law.

*Appeal from the District Court of El Paso County.*

ON January 9, 1894, appellee became county superintend-

ent of public schools of El Paso county. On January 10, 1894, he appointed his wife deputy superintendent. On October 1, 1894, appellee filed with the county commissioners the following bill:

" COUNTY OF EL PASO.

" To CLARENCE O. FINCH, Dr.

| | |
|---|---|
| Expenses visiting schools............................... | $25.90 |
| SERVICES OF DEPUTY: | |
| July —20 days, at $3.50 ............................... | 70.00 |
| Aug.—15 days " ............................... | 52.50 |
| Sept.—18 days " ............................... | 63.00 |
| Total........................................... | $211.40 " |

and by the board disallowed October 5th.

On January 15, 1895, he filed the following bill:

" COUNTY OF EL PASO.

" To CLARENCE O. FINCH, Dr.

| | |
|---|---|
| SERVICES OF DEPUTY: | |
| Aug. 1—July, 20 days..................................... | $70.00 |
| Sept. 1—August, 15 days.................................. | 52.50 |
| Oct.  1—Sept. 18 days.................................... | 63.00 |
| Nov. 1—Oct. 27 days..................................... | 94.50 |
| Dec.  1—Nov. 26 days.................................... | 91.00 |
| Jan.  1—Dec. 24 days.................................... | 84.00 |
| Total ......................................... | $455.00 " |

which was disallowed February 7, 1895.

Up to this date it appears that no claim for services of the deputy from January 10th to July had been made or bill presented to the board of commissioners. On February 20, 1895, a bill was filed, commencing at the date of the appointment of the deputy and ending with the year, embracing the two former bills from July to December. On same date the entire bill was rejected by the county commissioners. An appeal was taken from the decision of the board of county commissioners to the district court of El Paso county. On the 4th day of March, 1895, a trial was had to the court with

out a jury; a finding against the county for the services of the deputy, amounting to $987. The further item of the account of $75.90 for expenses of visiting schools was rejected. The board of county commissioners appealed to this court from such judgment.

Mr. Pearl S. King, Mr. T. B. Stuart and Mr. Chas. A. Murray, for appellant.

Mr. J. K. Goudy, for appellee.

Reed, P. J., delivered the opinion of the court.

The question squarely presented in this case is, "under the statutes in force January, 1894, had the county superintendent of public instruction authority to appoint and maintain a permanent deputy in his office to assist him in his duties, and charge and collect fees from the county for the services of such deputy?" It appears that appellee was the first to assume the right to appoint a permanent deputy in the county of El Paso, and that he decided upon the authority to do so and the necessity for such action before entering upon the duties of his office, as he entered the office January 9th, and appointed his wife on the 10th. The county commissioners denied such authority, and rejected all bills presented for such services. The court held, in effect, that the appointment of the deputy was a matter of *discretion* with the county superintendent; that he was to decide upon the necessity of such appointment, and his decision was conclusive. The language of the court's finding is: "When the county superintendent presented an itemized bill for the services of such deputy, duly verified, it became the duty of the commissioners to examine the bill, and as no stated *per diem* for the services of such deputy is fixed, it became their duty to fix a reasonable *per diem* for such services, and if the *per diem* charged was reasonable, the bill should have been approved," divesting the commissioners of all power in the premises,

except as to the amount of compensation to which the deputy was entitled, making the payment of some reasonable *per diem* compensation obligatory.

It is contended by counsel for appellee that the provisions of the statute in force prior to 1891 in regard to the appointment and compensation of a deputy were not repealed by the act of 1891. The provisions of the statute previous to the act of 1891, necessary to be considered, are :

Section 3979, Mills' Stats. " * * * If attendance upon the examination at the county seat work a hardship to one or more teachers in the county, he may provide for such teacher or teachers to take the examination at some convenient place under the direction of the deputy, who shall transmit to the county superintendent the written answers of each applicant as soon as the examination is completed. Such deputy shall receive the sum of five dollars per day for conducting such examinations, when such services are certified to the county commissioners by the county superintendent."

Section 3981, Mills' Stats. " If for any cause the superintendent is *unable* to attend to the duties of his office, he may appoint a deputy, who shall take the usual oath or affirmation of office, and who may exercise all the functions of county superintendent, *but such deputy shall draw no salary from the public fund*; *Provided*, that the superintendent may receive a *per diem* for the services of such deputy."

Section 3989, Mills' Stats. " For the time necessarily spent in the discharge of his duty, he [the superintendent] shall receive five dollars per day, and fifteen cents for each mile necessarily traveled one way. He shall, as far as practicable, render an itemized bill of his services and mileage," etc., etc.

Before proceeding to the question of the repeal of those provisions by the act of 1891, it will be necessary to examine them and ascertain under what circumstances a deputy could be appointed and how paid. When it worked a hardship upon teachers at a distance to attend examination at the county seat, the superintendent, in his discretion, was allowed to

appoint a special deputy to make the examination at a convenient place. Such deputy was required to transmit to the county superintendent the written answers of each applicant, making the duty of the deputy purely clerical, and leaving the principal to decide upon the fitness of the candidate. Such examinations are to be certified by the superintendent to the county commissioners, who are required to allow such deputy five dollars per day for the services. It is obvious that such compensation was to be paid from the general fund under the control of the board of commissioners, and such board had no discretion in regard to the amount to be paid nor the necessity for the appointment; but such authorization was by the statute to be only temporary, to cover the exigencies of the occasion, and with the close of the examination and transmission of the written report, his appointment, duties and compensation ended.

Section 3981: "If for any cause the superintendent *is unable to attend to the duties of his office*, he may appoint a deputy," etc. There was no provision for the appointment of a deputy to *assist* the superintendent in the duties of his office. When the superintendent was "unable," he was allowed to appoint a deputy in his place and stead, and, having taken the oath of office required, he was, as to the administration of the duties of the office and as to the public, the county superintendent, and his official acts entitled to the same recognition and consideration as those of his principal, when administering the office. But here it stops, for it is especially provided " *such deputy shall draw no salary from the public fund.*" Consequently, the appointment, compensation and payment of the deputy were matters in which the board of county commissioners had no discretion or interest whatever. There was no provision for the payment from the county fund of the deputy, nor any provision for the payment of two persons. The deputy was employed and paid by the superintendent during his disability, and could only perform the duties of superintendent during such disability, and the statute makes no provision for any payment

to the deputy, but expressly provides that the superintendent shall receive his own *per diem* compensation, as provided in the next section, for the service of his deputy in his place, during his incapacity to perform the duties. Under the statutes relied upon there is no authority to employ a deputy to be paid by the county, except for brief periods and for a temporary, specific duty, and the employment of any other deputy to be paid from the public fund is expressly prohibited by section 3981. Even when unable to perform the duties of his office, the county superintendent must employ and pay the deputy, and the only compensation for administering the office was the five dollars a day provided by the statute. I must conclude that even under the former statute, upon which appellee relies, there was no authority to employ a deputy to be paid by the county commissioners from the public fund under their control.

In 1891 the legislature deemed it advisable to make certain offices salaried instead of fee offices, depending upon the duties performed. Among these was the office of county superintendents of schools. In section 14 of the act (Sess. Laws 1891, p. 312), it is provided: "County superintendents of schools * * * shall receive the following compensation for their services to be paid quarterly out of the county treasury, to wit: * * * In counties of the second class the sum of twenty-five hundred dollars." El Paso county was by the act, in section 1, made second class. "Sec. 26. All acts and parts of acts inconsistent with the provisions of this act are hereby repealed." There is no provision for the employment of a deputy. The learned district judge held the appointment of a deputy in the discretion of the superintendent. He undoubtedly had the right to appoint a deputy if he saw fit. The question is not in regard to his right to appoint, but in regard to the payment of such deputy. The suit was brought to compel the county commissioners to pay from the public fund. In the statute relied upon by appellee and the court, the court, in citing the provisions of section 3981, overlooked and failed to cite the important

clause, "but such deputy shall draw no salary from the public fund." It is clear from the express language of the statutes that the sum of $2,500 was to be the compensation for the performance of the entire duties of the office, there being no provision for fees, assistance or incidental expenses. Consequently, an administration that involved greater expense, or payment of any greater sum from the county treasury, was clearly impliedly forbidden, and any provision of the former law that might be construed as authority to employ at the expense of the county was, in so many words, repealed. As shown above, the only provision for employment of a deputy to be paid from the public fund was that for the examination of teachers at a distance from the county seat. That, as far as the payment was concerned, was inconsistent with the later act, and was repealed by the act of 1891. That the $2,500 per annum was intended by the legislature as the entire compensation appears to have been partially recognized by the learned court in his decision. In the former statute it was provided the superintendent should receive " fifteen cents for each mile necessarily travelled one way." This was held to have been repealed,—a clear recognition of the fact that the salary was to be the only compensation. Why this should be regarded as repealed, and other far more questionable provisions retained, I cannot understand.

Upon the trial testimony was allowed to show the necessity of a deputy. Assistance may have been necessary, but if such was the fact it was clearly the intention of the legislature that it should be paid by the superintendent from his salary. There is no provision for the payment for the administration of the office by the commissioners of any amount, except the salary which is to be paid quarterly. The question of help in the office and *necessity* are not factors in the controversy. The county commissioners are not invested with any discretion in regard to the disbursement of funds intrusted to them. They can only be applied as directed by law. For any unwarranted use of county money, without legal authority, they would be responsible individually. It

follows that the county commissioners were warranted in rejecting the bills and refusing payment. To give the statute any other construction would place any county in the state within the control of the county superintendent. He could decide upon the necessity, and swear to it, if necessary, and his conclusion be final; and in the exercise of what was held to be discretionary, he could appoint a deputy to transact the business, who would, upon the certificate of the superintendent, receive his pay direct from the county treasury, and such certificate would be conclusive upon the commissioners and divest them of the control of county money to the extent of the amount appropriated by the superintendent. It would enable an unscrupulous officer to employ a deputy to do the work, who should be paid from the public fund on his order, while he drew his salary quarterly for performing such duties. If such is the law, the passage of the law of 1891 by the legislature to correct former abuses was a great mistake.

One pertinent fact brought out upon the trial was that although appellee decided in advance of the necessity of a deputy, and appointed his wife on the second day of his incumbency, he did not at that time, nor for months after, put the construction upon the law afterwards adopted. Although the deputy was appointed January 10, 1894, no bill was presented or payment demanded for her services for the first six months until February 20, 1895, when suit was brought. On October 1, 1894, a bill was presented for the months of July, August and September; on January 15, 1895, a copy of the former bill, to which was added the months of October, November and December, the whole amount claimed being $455. Afterwards, as stated, a bill was put in for $987, embracing the services for the first six months. The explanation in the testimony of appellee was: "I put in a bill for July, August and September. I did not file one for the preceding months. I do not know why I did not. The deputy was employed on those days prior to the first of July the same as after the first day of July. * * * I will

say, I did not do it because I did not think the board would allow it, and I had not made up my mind to sue." Although conclusive of nothing, it is very suggestive. No bill was presented or claim made for services until October 1, when nine months of the year were gone.

The judgment of the district court must be reversed and cause remanded with instructions to dismiss the suit.

*Reversed.*